## Watkins v. Watkins.

## Watkins v. Watkins.

(Decided May 19, 1925.)

### Appeals from Breathitt Circuit Court.

1. Deeds—Grantor's Unlawful Destruction of Valid Deeds Executed and Delivered to Grantees did Not Restore Title in Grantor.— Grantor's unlawful destruction of valid deeds executed and delivered to grantees did not restore title in grantor.

2. Equity—He Who Comes Into Equity Must Come with Clean Hands.—He who comes into equity must come with clean hands.

3. Equity—Grantor's Unlawful Method of Destruction of Deeds She

Thereafter was Forced to Supply by Executing New Deeds Held
to Bar Her from Securing Cancellation of Latter Deeds.—Where
a grantor broke into the dwelling house of grantees and willfully
destroyed their deeds, and was thereafter compelled, through
threats of prosecution for housebreaking, to execute new deeds in
lieu of those destroyed, her unlawful method of destruction of
deeds held to bar her from securing cancellation of latter deeds
as for having been procured through duress.

A. H. PATTON and A. S. JOHNSON for appellant.

E. C. HYDEN for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

The two actions above were consolidated and heard
and tried together in the court below, and, while the ap-
peals appear to have been prosecuted separately, they
will be considered and determined in this one opinion.

By her petitions appellant sought to cancel a deed
she had made to appellee, Emzy Watkins, and one she
had made to appellee, Benton Watkins, upon the ground
that they had been procured by fraud and duress. Ap-
pellees joined issue with her and upon the trial of the
actions the chancellor dismissed appellant's petitions and
these appeals have followed.

It appears that appellant inherited from her father
a small tract of land. Some few years ago she divided
that land between her two sons, the appellees herein, and
executed and delivered to them separate deeds of con-
veyance. Afterwards it appears that her two daughters
evidenced their displeasure, and the two sons voluntarily
surrendered the deeds that had been made to them, which
had not been recorded and they were destroyed. There-
upon appellant executed and delivered to each of them
a new deed by which she conveyed to them respectively
the same tracts of land formerly conveyed to them; but
by the new deeds it was provided that each of the two
daughters should be paid $300.00. The new deeds were
duly signed, acknowledged and delivered by appellant
and the appellees took them to their home and put them
away for safekeeping. Some time passed and appellant
appears to have become dissatisfied with the latter deeds
she had made, and, on an occasion when her two sons were
not at home, went to their home, broke and entered the
dwelling house and broke and entered the receptacles in

which the deeds were kept, took them and destroyed them. Upon discovering what appellant had done, the appellees appear to have become angry and to have demanded that appellant execute to them other deeds in lieu of those she destroyed. In that connection they threatened to prosecute her for housebreaking if she did not do so. Whereupon, and on July 24, 1922, appellant executed and delivered to appellees new deeds. Those are the deeds sought to be cancelled by appellant in these actions upon the ground that they were procured from her by duress.

There is little contradiction in the evidence in the record, and the foregoing is in brief a summary of it. The evidence discloses conclusively the execution and delivery to appellees by appellant of the two former sets of deeds conveying to them the same tracts of land conveyed by the last set of deeds which she seeks to cancel herein. Appellant admitted breaking the dwelling house of appellees and the receptacles in which the deeds were kept and the taking and destroying of the deeds. The appellees admit that after she had done so, and in their efforts to obtain the deeds sought to be cancelled, they threatened to prosecute her for housebreaking. While it appears that the first two sets of deeds made by appellant to appellees were made after presuasion upon their part, appellant's own testimony does not establish that they exercised any undue influence or practiced any fraud to procure them. Therefore, if appellant should succeed in having the last deeds made by her to appellees cancelled upon the ground that appellees' threats to prosecute her for housebreaking so put her in fear as to constitute duress, it would not have the effect of restoring to appellant the title of the tracts of land she had previously conveyed to appellees. The title of the land passed from appellant to appellees upon the execution and delivery of the former deeds, and the execution and delivery by her of the last two deeds, did no more than to supply the lost evidence of title. If the last two deeds should be cancelled at the instance of appellant in these actions, the title of the lands in question would still remain in appellees. They could go into a court of equity and under the facts disclosed by this record compel appellant to supply the lost deeds.

From a consideration of all the facts of this case this court has concluded that appellant is in no position

to complain to a court of equity of the conduct of the appellees in procuring her to supply the destroyed deeds. Her method of destroying the deeds that she was forced to supply puts her beyond the protection of a court of equity. No maxim of equitable jurisprudence is older or more venerated than that ''he who comes into a court of equity must come with clean hands.'' To grant appellant the relief sought would be to relieve her of the consequences of her own wrong. The facts of this case disclose it to be such that a court of equity can only leave the parties where it found them. The chancellor properly declined to lend the aid of equity to relieve appellant of the consequences of her own wrong and properly dismissed her petition.

Wherefore, the judgment in each of the above cases is affirmed.